RENDERED: AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1322-ME

P.E.D.                                                                          APPELLANT


                          APPEAL FROM GRAVES CIRCUIT COURT
v.                        HONORABLE KEVIN BISHOP, JUDGE
                          ACTION NO. 25-AD-00031


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES, J.A.V., AND
M.J.A.V., A MINOR CHILD                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, ECKERLE, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: P.E.D. ("Mother") appeals from the Graves Circuit

Court's termination of her parental rights to Appellee, minor child M.J.A.V.

("Child"). After careful review of the record, we AFFIRM.

# BACKGROUND

The Cabinet for Health and Family Services ("Cabinet") first became involved with the family in December of 2023, after receiving a report that the parents were abusing substances with Child in the home, and that drugs could be found throughout the home. Additionally, Mother was allegedly prostituting herself and bringing Child along. Layne Chesser, Cabinet investigator, conducted a home visit and found the home unsanitary and in complete disarray. Chesser asked the parents to take a drug screen and clean the home. Though argumentative, the parents cooperated enough to allow Child to remain in the home.

In January of 2024, Chesser received a second report. Child was significantly delayed in development, and the parents were not getting him the medical attention he required. As they were still suspected of using illegal substances, the Cabinet filed for court-ordered cooperation, and the Graves District Court opened the case. Again, the parents tendered minimal cooperation with the Cabinet and submitted to a drug screen, so the case was informally adjudicated.

By March 22, 2024, the Cabinet received two more reports. The parents had both been arrested for assault and left the child with an unwilling caretaker. Mother was reportedly homeless and living in a tent with Child and a registered sex offender. J.A.V. ("Father") had been absent for several weeks.

Child was over two years old and could not walk or talk; he was severely developmentally delayed. Child had not seen a pediatrician in approximately two years.

On March 25, 2024, the Cabinet filed for and was granted emergency custody in a Dependency, Neglect, and Abuse ("DNA") action; Child has remained in its care and resided with a state-approved foster family ever since.[1] At the Adjudication Hearing, Father stipulated to neglect, and Mother also stipulated to neglect pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Both parents' hair follicle drug screens returned positive for methamphetamine. The family's case was then transferred to the ongoing treatment worker, Jennifer Camp.

At the ten-day conference shortly after Child came into Cabinet custody, the parents were given a case plan. The case plan tasks were as follows: cooperate with the Cabinet, abide by the visitation agreement, sign releases of information with all community partners, complete a substance abuse assessment and follow recommendations, complete a mental health assessment and follow recommendations, complete a domestic violence assessment at West Kentucky

---

[1] The Cabinet considered all relatives and was unable to find any that were able and willing to care for Child. Mother's sisters were inappropriate, as one is married to a registered sex offender and experiences domestic violence, while the other has substance abuse and Cabinet history. Child's half-siblings on his father's side also have substance abuse issues.

Drug and Alcohol and follow recommendations, demonstrate a drug-free lifestyle for nine to twelve months, obtain and maintain stable housing, and obtain and maintain stable employment. For Mother specifically, the Cabinet required the following: make sure her medical card is active, develop a positive support system, avoid those partaking in criminal activity or under the influence of illegal substances, and be honest with the Cabinet and service providers. The Graves District Court adopted the case plan as a court order.

Camp testified that the parents have not made sufficient case plan progress to return Child to their care.[2] The only step Mother has taken on her case plan was completing a five-month[3] substance abuse rehabilitation program at Addiction Recovery Center ("ARC") Yellow Banks, which she began approximately one year after the DNA case.[4] Mother has not done any domestic violence or mental health assessment or followed the recommendations. She has not completed parenting classes. She currently resides with her sister, where a

---

[2] Father is homeless and sleeps from couch to couch. He testified at trial that he had not and will not do one single item on his case plan.

[3] Mother maintains that she completed six months at ARC. However, the date on her signed discharge letter indicates she only spent five months there; thus, the circuit court determined she only completed a five-month program at ARC.

[4] Prior to the ARC program, Mother had been receiving services at Emerald Therapy. In October of 2024, she was sanctioned and released from the Emerald Therapy program due to testing positive on two drug screens for cocaine. In December of 2024, Emerald Therapy recommended a higher level of care. Mother subsequently entered and left an inpatient treatment at the Fuller Center after a few days, stating she had been assaulted. She did not sign a Release of Information for the Cabinet to obtain records to verify her assertion.

-4-

registered sex offender also lives. She receives Social Security Income ("SSI") due to a documented disability but has not paid child support throughout the duration of the case.[5] Camp testified that Mother would need to demonstrate sobriety and stability for at least nine to twelve months before the Cabinet would consider returning Child to her. That timeframe never began, as Mother has failed to secure stable housing.

Child is in an adoptive home and is doing well.[6] He is receiving speech therapy, occupational therapy, and physical therapy. He is walking, talking, and having all his needs met.

Mother has an older child who was adopted in 2011. She does not know why or recall whether her rights were involuntarily terminated or not. She somewhat quixotically believes her rights to her older child were determined by her own mother's will. Mother was charged with fourth-degree assault for throwing this child on the floor and leaving her there.

**PROCEDURAL HISTORY**

The trial commenced without a jury on September 15, 2025, in Graves Circuit Court. The court heard testimony from an ARC case manager, Cabinet

---

[5] As of the trial date, Mother had a child support arrearage of $926. At trial, she denied being aware of her child support obligation.

[6] The foster family intends to adopt Child once termination of parental rights ("TPR") is finalized.

employees, and the parents. On September 19, 2025, the trial court issued findings of fact and conclusions of law and entered an order terminating both parents' parental rights to Child. This appeal followed.[7]

Briefs were filed pursuant to Kentucky Rules of Appellate Procedure ("RAP") 22(A), RAP 26(B)(4), and RAP 30(E) allowing an expedited process. The Cabinet filed a motion to strike Mother's brief and dismiss her appeal due to failure to include citations to the record and preservation statements. This Court granted the request to strike Mother's brief as deficient but denied the motion to dismiss. Three days after that order, Mother's counsel moved to withdraw from representation of Mother due to "a breakdown in the attorney/client relationship" and for enlargement of Mother's briefing schedule. This Court denied counsel's motion to withdraw, noting that, since counsel failed to serve Mother with a copy of the motion, there was insufficient information to justify granting the motion, and Mother would suffer "material adverse effects" if the appeal was further delayed. Following re-submission of Mother's brief, the Cabinet filed a second motion to strike Mother's brief and dismiss her appeal for the same failures of her first brief. This Court found the second brief substantially compliant and denied both motions.

---

[7] Father testified that he does not want his rights to be terminated. However, he does not want custody of Child and, instead, desires Child be with Mother. Although he is a named party in this matter, Father did not appeal the termination of his parental rights to Child.

## STANDARD OF REVIEW

We review a trial court's involuntary termination of parental rights under the clearly erroneous standard of review, which focuses on whether the trial court's order of termination was based on clear and convincing evidence. Kentucky Rules of Civil Procedure ("CR") 52.01; *Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014); *J.R.E. v. Cabinet for Health and Fam. Servs.*, 667 S.W.3d 589, 592 (Ky. App. 2023). Further, "an appellate court is obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." *K.H.*, 423 S.W.3d at 211 (citing *Cabinet for Health and Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010)). Substantial evidence is "proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Res.*, 979 S.W.2d 114, 117 (Ky. App. 1998) (quoting *Rowland v. Holt*, 253 Ky. 718, 726, 70 S.W.2d 5, 9 (1934)); *see also Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citing *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

## ANALYSIS

To ensure the protections of due process are upheld, KRS 625.090 requires satisfaction of a tripartite test by clear and convincing evidence. *K.H.*, 423

S.W.3d at 209.  The three prongs are as follows:  (I) the child has been adjudged an "abused or neglected child" as defined by Kentucky Revised Statutes ("KRS") 600.020(1); (II) termination of parental rights is in the child's best interests; and (III) at least one of the termination grounds listed in KRS 625.090(2)(a)-(k) exists. *Id.*

Mother claims the Cabinet failed at every step to meet its statutory burden.  First, she argues that post-treatment she posed no actual or prospective risk of harm to Child, and that her *Alford* plea in the underlying DNA case was improperly treated as substantive evidence of neglect.  Second, she contends the circuit court's best-interest finding failed to meaningfully engage with the evidence of her completed five-month residential rehab program, her consistent visitation with Child, and her continued efforts toward securing housing stability.  Third, she maintains that the Cabinet failed to prove by clear and convincing evidence that there was no reasonable expectation of improvement, given her successful completion of the ARC treatment program and her active search for stable housing.

We analyze each prong of the tripartite test in turn, addressing Mother's contentions as they become relevant.

**I. There Is Substantial Evidence That Child Is an "Abused or Neglected Child."**

Child was formally adjudicated as a neglected or abused child by the Graves District Court, a court of competent jurisdiction, on April 16, 2024.[8] After trial, the circuit court affirmed this conclusion and issued its own findings of fact that Child was "abused or neglected" pursuant to KRS 600.020(1) with Mother and Father as the persons responsible. There is substantial evidence in the record to support this finding.

Mother claims that, following treatment, she posed no actual or prospective risk of harm to Child. However, after release from the ARC program, Mother had the opportunity to enter sober living, but she instead chose to live with her sister, who is married to a registered sex offender. There is documented domestic violence in that home. Additionally, the alleged absence of future risk does not negate past evidence of neglect. Prior to Child's placement with the Cabinet, Mother had been living with Child and a different registered sex offender in a tent. At the time of removal, her drug screen returned extremely high for methamphetamine.

Past the age of two, Child was unable to walk or talk. He was severely developmentally delayed, and he had not seen a pediatrician in over two

---

[8] Graves County Juvenile Action No. 24-J-00003-002. Father was found responsible.

years.  Though Mother testified she provided Child with everything he needed, she blatantly disregarded his medical needs.  Furthermore, throughout the eighteen months Child was in foster care before trial, Mother did not provide food, clothing, shelter, medical care, or education for Child, nor make any contribution towards providing these needs.

Though Mother insists the circuit court improperly treated her *Alford* plea as evidence of unfitness, the circuit court mentioned the stipulation only once in its findings of fact and conclusions of law.  Rather, the court relied on the ample evidence detailed above to conclude Child had been abused or neglected by clear and convincing evidence.

**II. Based on Substantial Evidence, the Trial Court Did Not Abuse Its Discretion in Finding That TPR Is in the Child's Best Interest.**

KRS 625.090(3) lists the following factors that must be considered when making a best interest determination:  (a) mental illness and/or intellectual disability; (b) acts of abuse or neglect toward any child in the family; (c) whether the Cabinet made reasonable efforts to reunite child in Cabinet custody with the parent before filing the petition to terminate their rights; (d) any efforts and adjustment the parent has made in her circumstances, conduct, or conditions to make reunification in the child's best interest; (e) the child's overall welfare and outlook for improvement if termination is ordered; and (f) payment or failure to

pay a reasonable portion of the child's care and maintenance if financially able to do so.

Mother's main contention is that the Cabinet failed to provide and document reasonable efforts toward reunification before seeking TPR, as required by KRS 625.090(3)(c)1. Allegedly, the Cabinet failed to timely provide case records and findings, to adequately update or individualize the case plan when Mother entered long-term treatment, and to adjust services when Mother demonstrated substantial, documented improvement. Mother relies on two opinions from this Court: *J.W. v. Cabinet for Health and Family Services*, 719 S.W.3d 70 (Ky. App. 2025), and *M.E.C. v. Commonwealth, Cabinet for Health and Family Services*, 254 S.W.3d 846 (Ky. App. 2008).

These cases are unavailing due to significant factual differences. In *J.W.*, the Cabinet failed to meet its burden of proof because the alleged items the father failed to complete were *never* included in his case plan. 719 S.W.3d at 80. That was not the case here. Mother was provided with a lengthy but clear case plan from the start, and Cabinet employees provided resources to help execute her action items. Likewise, *M.E.C.* may be distinguished. Prior to removal, the children in *M.E.C.* were well cared for and in good health, unlike Child who was seriously developmentally delayed. 254 S.W.3d at 851. Mother's completion of the ARC program more than a year after removal is not comparable to the mother's

efforts in *M.E.C.*, who had not only enrolled in a rehabilitation program, but also held a full-time job, sought and attended parenting classes, resolved most of her outstanding legal issues, and exercised as much visitation with the children as possible by arranging transportation herself. *Id.* at 854.

The ARC case manager, Schluntz, testified that Mother went "above and beyond." She completed all requirements of the program and more, including a "Spiritual Pathways" course, an online parenting class, a DUI assessment, and some Celebrate Recovery courses; however, there are no records of these additional courses. The circuit court determined that Schluntz was an unreliable witness. At trial, Mother could not verbalize anything she had learned in treatment, simply testifying it was all "personal." Following her release from the ARC program, Mother had the opportunity to enter sober living. She instead chose to reside with her sister who is domiciled with a registered sex offender. Mother stated at trial that she did so because she missed her sister and her niece and nephew, but that she is willing and desires to enter a sober living residence immediately. ARC did not provide Mother with an aftercare plan.

Mother maintained consistent visitation, both virtually and in person. Though Mother insists she maintains a strong bond with Child, citing how Child recognized her as his mother and smiled for her during visits, Camp observed and testified that Mother and Child were not bonded. While the circuit court accepted

Camp as a credible witness, it found Mother non-credible. Since being placed in foster care, Child's neglected medical needs have finally been met. He is now able to walk and run, and his speech is improving daily. Child is reportedly bonded with his foster parents, who intend to adopt once termination is final.

Mother claims she has been actively searching for appropriate housing. Camp wrote a letter to the housing authority on Mother's behalf, but Mother never retrieved it from the Department for Community Based Services. As of the date the circuit court rendered its findings of fact and law, Mother was number sixty-nine on the waitlist for the Department of Housing and Urban Development housing. At trial, Mother denied knowledge of her child support obligation, despite having been properly served with a child support order.[9] Since Child was taken from her care, she has made no provisions for him. She is unemployed and receives monthly SSI. As of the trial date, Mother had accrued a child support arrearage of $926. Both factors further weigh in favor of TPR.

**III. There Is Substantial Evidence That at Least One Ground for Termination as Enumerated in KRS 625.090(2) Exists.**

The court must find that at least one of the grounds for termination enumerated in KRS 625.090(2)(a)-(k) exists to support the TPR. Mother met three statutory grounds: KRS 625.090(2)(e), (g), and (j). Evidence in the record

---

[9] Action No. 24-J-00003-002 from Graves District Court entered on May 28, 2024.

substantiated each of the grounds. The circuit court meticulously detailed its findings of fact and conclusions of law based on the evidence.

KRS 625.090(2)(e) and (g) require a showing that there is "no reasonable expectation of significant improvement." Mother claims her successful completion of the five-month residential treatment program at ARC directly contradicts the trial court's finding of no reasonable expectation of improvement in parental care and protection or provision of essentials such as medical care and education. However, the ARC program is only one out of thirteen items on her case plan. She has not started domestic violence classes or completed a parenting class approved by the Cabinet. In the year after the Cabinet took custody of Child, Mother was diagnosed with ADHD and bipolar disorder; Camp testified that she had no idea how mother was treating her mental health throughout the case. She is currently unemployed and homeless.

Offsetting Mother's claim of error is the fact that Child had been in foster care under Cabinet protection for fifteen cumulative months out of forty-eight months preceding the filing of the TPR petition, pursuant to KRS 625.090(2)(j). This fact alone satisfies the third prong.

Finally, "age is an important consideration . . . more significant and quicker progress must be demonstrated when younger children are the subject of [TPR]." *M.E.C.*, 254 S.W.3d at 855. At the time of trial, Child was four years old.

The circuit court was well within its discretion when it determined it was "time to put the permanency needs of [the] child first."

**IV. Mother Failed to Establish That Further Services Would Enable Reunification.**

In addition to the tripartite test, KRS 625.090(4) provides parents the opportunity to present evidence regarding the Cabinet's reunification efforts and whether additional services would be likely to effectuate a child's return to the parent. Mother alleges the Cabinet did not demonstrate reasonable efforts at attempting reunification and failed to adapt her case plan both during and after her completion of the ARC program.

This claim is meritless. The Cabinet exhausted its resources to provide Mother with the guidance and support necessary to complete her case plan; her delayed fulfillment has proven fatal to her case. Nearly two years have passed since Mother received her case plan, and she still has not secured appropriate housing. Though Mother's completion of the ARC program is admirable, it was but the first step necessary to achieve reunification. Mother has not displayed sufficient efforts in a timely fashion to warrant reversal of TPR.

## CONCLUSION

We find no clear error in the Graves Circuit Court's decisions. Substantial evidence in the record supports its conclusions in satisfaction of the tripartite test. We AFFIRM.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Gini G. Grace
Symsonia, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky